## BAKER & *a.* v. DAVIS & *a.*

A motion for leave to amend the return of an extent on land is addressed to the discretion of the Court and will be denied if the amendment would operate unjustly to the parties interested.

It is no valid objection to such a motion that it is made by, or in behalf of the debtor.

Where the whole equitable interest in a judgment, recovered in the name of two plaintiffs, was vested by assignment in one of them, and the plaintiff, who owned the judgment delivered his execution to an officer with instructions to levy on personal property, but without instructions to levy on land attached, and declined an application by the officer to appoint an appraiser to set off land; and the officer afterwards, with notice of the assignment, applied to the other and nominal plaintiff to appoint an appraiser, and, on his appointment of an appraiser, extended the execution on land of the debtor, a motion made in behalf of the debtor and officer for leave to amend the return of the extent was denied.

DEBT, by John Baker and Nathaniel Baker, against Nathaniel A. Davis and Benjamin Wadleigh on a judgment for

$401.59 debt and cost, recovered in the county of Merrimack, March Term, 1845.

Plea, that on the 4th of April, 1845, the plaintiffs sued out their writ of execution and caused execution on said judgment to be done in full satisfaction thereof, and said execution to be returned fully satisfied.

To this the plaintiffs replied, denying the allegations of the plea and tendering an issue, which was joined by the defendants.

To support their plea the defendants produced on trial an execution issued on the judgment in suit, and the return of an extent on land. The return stated the appointment of appraisers and their oath, as follows :

" I caused three appraisers to be appointed, that is to say, Robert Lane by Nathaniel Baker, one of the creditors within named, Reuben Porter by the *debtor* within named, and John Pillsbury by myself, who being duly sworn by a Justice of the Peace impartially to appraise such real estate as should be shown to them as the estate of the debtor," &c.

The plaintiffs objected to the return, that it did not show which debtor appointed the appraiser. This Court, to whom the question was transferred, held that the return was defective in that particular, and the levy void.

It was now moved in behalf of the defendants, and of the officer who served the execution, that he have leave to amend his return, by inserting after the words " Reuben Porter by," and before the words " the debtor within named," the words " Nathaniel A. Davis " ; and also by inserting after the words " as the estate of," the words " Nathaniel A. Davis," so that the return might show that Nathaniel A. Davis was the debtor, who appointed an appraiser, and whose land was taken under execution.

*Joel Parker* for the defendants and the officer. A return that seisin has been delivered to one of two judgment creditors is sufficient. *Smith* v. *Smith*, 11 N. H. Rep. 459. Any objection, therefore, because Nathaniel Baker acted in the matter, cannot avail.

The lapse of time is not sufficient to bar such an amendment. *Gilman* v. *Stetson*, 16 Maine Rep. 124; *Libby* v. *Copp*, 3 N. H. Rep. 45; *Whittier* v. *Varney*, 10 N. H. Rep. 290.

There are no fixed rules governing the Court in relation to applications to amend officers' returns. Whether an amendment shall be allowed rests in a sound exercise of judicial discretion. *Johnson* v. *Day*, 17 Pick. Rep. 108; 3 Cowen 39, and cases cited note page 44; *Pierce* v. *Strickland*, 2 Story, 308.

It is the duty of the Court to exercise the discretion and grant the leave; *Montgomery* v. *Brown*, 2 Gilman's Rep. 584.

The Court will grant the leave notwithstanding the amendment may defeat proceedings already commenced. *Whittier* v. *Varney*, 10 N. H. Rep. 290, before cited; *Thatcher* v. *Miller*, 11 Mass. Rep. 413; *People* v. *Calhoun*, 1 Douglas (Mich.) Rep. 421.

As it respects these amendments the officer is not the servant of the creditor; but the right of amendment under leave of the Court is the right of the officer himself. *Walkins* v. *Gayle*, 4 Ala. Rep. 153; *McGeehee* v. *McGeehee*, 8 Ib. 86; *Cauthorne* v. *Knight*, 11 Ala. Rep. 269; *Whiting* v. *Bradley*, 2 N. H. Rep. 83; *Bates* v. *Willard*, 10 Metcalf, 62; *Hodges* v. *Laird*, 10 Ala. Rep. 678; *Broughlin* v. *Allen*, 6 Humph. Rep. 96; *Atkinson* v. *Rhea*, 7 Humph. Rep. 59; *Pierce* v. *Strickland*, 2 Story R. 292.

The amendment ought to be allowed, because the suit is an attempt to revive a judgment against a surety. The creditor having taken the property of the principal is no more at liberty to reject it in this way, and hold the surety, than he would have been at liberty to abandon it voluntarily and then collect the execution of the surety.

Where the principal has left a sufficient fund in the hands of the obligee and he thinks fit to pay it back to the principal, the surety can never be called on. *Law* v. *The East India Co.* 4 Ves. 829. And the distinction between principal and surety is not destroyed by obtaining judgment on the injured security. *Commonwealth* v. *Miller's Administrator*, 8 Serg. and Rawle, 452 – 458.

3 *

*Porter,* for the plaintiff. The mere seizure of property on execution does not work a change of title, it merely creates a lien. *Churchill* v. *Warren,* 2 N. H. Rep. 299; *Folsom* v. *Chesley,* Ib. 432; *Goddard* v. *Perkins,* 9 N. H. Rep. 488.

The property is only in a state of seizure, until execution is done and perfected; the levy may be abandoned at any point before it is made complete and the title thereby changed. *Sullivan* v. *McKeen,* 1 N. H. Rep. 371; 2 Ib. 299, and 4 Ib. 432, before cited.

A creditor cannot be compelled to complete a levy begun, but not finished. It is said in 4 Mass. Rep. 402, that the lands of the debtor cannot be taken unless by the *acceptance* of the creditor.

The right to amend or avoid the return of an extent is limited to those who claim under it, or who procured it to be made. *Whiting* v. *Bradley,* 2 N. H. Rep. 79. And the practice has been in accordance with that limitation. *Libby* v. *Copp,* 3 N. H. Rep. 45; *Rowell* v. *Hoit,* 8 N. H. Rep. 38; *Mahurin* v. *Brackett,* 5 N. H. Rep. 9; *Whittier* v. *Varney,* 10 N. H. Rep. 291; *Thatcher* v. *Miller,* 11 Mass. Rep. 413; S. C. 13 Ib. 270.

If an extent be insufficient on its face to pass the land, the judgment remains unsatisfied and debt will lie to enforce it. *Green* v. *Bailey,* 3 N. H. Rep. 34; *Burnham* v. *Coffin,* 8 N. H. Rep. 114. But this remedy would be of no value, if the action on the judgment were liable to be defeated at any time by an amendment of the return allowed on motion of the defendant. In the levy of an execution, as well as in the service of mesne process, the officer is the servant of the creditor to do such act as the law authorizes. He can do no valid act except in obedience to orders of the creditor, express or implied; and where express orders are given they supersede all general or implied authority.

This levy was not only made without orders, but against orders. The attorney of the creditor, when he delivered the execution to the officer, directed the personal property to be

disposed of. Here were special directions limiting, by necessary implication, the duty of the officer.

No subsequent authority was given to levy. John Baker was known to the officer to be the sole creditor. No application for authority to levy was made to Nathaniel Baker, until after it had been made to John and had failed, and the case in 11 N. H. Rep. 459, is not in point.

Courts will protect the interest of real parties against all improper interference of a nominal plaintiff. *Farnsworth* v. *Swett*, 5 N. H. Rep. 267 ; *Lupton* v. *Cutter*, 8 Pick. 299.

The creditor had given no authority to make the levy, and was therefore under no obligation to procure an amendment of the return. We agree to the doctrine that in every case the Court should exercise a sound discretion in allowing or disallowing these amendments. 3 Greenleaf, 264 ; 4 Dana, 264.

To the suggestion that one of the defendants is a surety and interested in perfecting the extent on land of the principal, it is sufficient answer to say that no land of the principal has been levied on by the creditor, or by his authority ; and there has been no fund in the hands of John Baker, which he was under obligation to apply in payment of the judgment. The case in 4 Vesey, 829, is not in point.

PERLEY, J. A good deal of evidence has been submitted to the Court on this motion, from which the following statement of facts is clearly deduced.

On the 15th of January, 1840, the defendants gave the plaintiff their promissory note for $284.89. The note was given for money lent to Nathaniel A. Davis, and Benjamin Wadleigh was a surety. Wadleigh was then, and has been since, a man of property, at all times abundantly able to pay the debt. Previous to the 17th of January, 1844, Nathaniel Baker transferred to John Baker his interest in the note, and, since that transfer, John Baker has been the sole owner of the note and of the judgment recovered on it.

A little before the 17th of January, 1840, John Baker, being then the owner of the note, left it with Morrison & West, attor-

neys, for collection, who, on that day, made a writ on it and sent the writ to Marcus E. Sargent, a deputy of the sheriff of Merrimack county, with instructions to attach property of Davis, personal property, if it could be found, at any rate to attach property of Davis's enough to secure the debt. Sargent received the writ, and on the first day of February, attached certain real, but no personal estate, as the property of Davis, and wrote to Morrison and West that he could find no personal property. This information Morrison and West communicated to John Baker, who thereupon went himself to Sutton, where Davis lived, and gave Sargent express instructions to attach certain mill logs, valued in the officer's estimate at $200, and certain other personal property valued at $32.50, which was the unincumbered property of Davis, and also certain other real estate. Sargent attached this property on the 7th of February, as appears by his return. The logs attached were not removed, but notice of the attachment was left with the town clerk. Before the plaintiff recovered judgment, the personal property attached, without the consent of the plaintiff, had passed into the hands of Davis, and been disposed of by him.

Within thirty days after judgment was recovered, Morrison & West sued out an execution, and sent it to Sargent with instructions to levy on the personal property attached, but giving no authority to levy on the real estate. Sargent wrote soon after to Morrison & West on the subject, and, on the 24th of April, wrote to John Baker, urging him to give instructions for levying on the land, and to appoint an appraiser, stating, among other things, that Wadleigh was discharged, that the personal property was gone, that Davis intended to redeem the land, that Davis proposed to see him, Baker, on the subject, and that he could not serve the execution on Wadleigh's property without indemnity from John Baker. John Baker communicated this letter to Mr. Morrison, who advised him to do nothing which should authorize Sargent to levy on the land, and no such authority was given by John Baker or his attorney. Before Sargent applied to Nathaniel Baker to appoint an appraiser, he was expressly informed that the debt belonged to John, and Nathaniel had no interest in the execution.

Baker *v.* Davis.

Before the expiration of the thirty days, Sargent applied to Nathaniel Baker to appoint an appraiser, and Nathaniel then told him he was not interested in the suit, or that the note belonged to John, and he did not know that he had any thing to do in the matter; but Nathaniel, by the persuasion of Sargent, consented to appoint an appraiser.

When Sargent applied to Nathaniel to accept seisin, Nathaniel told him he had no more to do with the matter than any other man, and he had better write to John. To induce Nathaniel to accept seisin, Sargent told him that Wadleigh was' free from his liability as surety, that the land would sell for fifty dollars more than the appraisal, and that the levy must be returned soon, to be recorded, as the time had nearly expired.

John Baker has never taken possession of the land or in any other way recognized the levy, and had no knowledge or notice that it was made until December, 1845.

The plaintiffs have contended that the evidence shows Davis to have colluded with the officer to procure the levy to be made without the consent and against the wishes of John Baker, the owner of the execution. But the Court have not found it necessary to decide that question of fact.

The plaintiffs resist this motion, in the first place, because it is made by, and in behalf of, the debtor, and contend that the creditor alone has such an interest in perfecting the extent of an execution upon land, as will warrant an application for leave of the Court to amend the return.

Amendments of mistakes and omissions in returns are allowed, to promote justice and equity, by making the record agree with the true state of the facts. Courts exercise this power to prevent innocent parties from suffering by the error or neglect of a ministerial officer, like the sheriff. It would seldom happen that a creditor would desire to defeat his own title under an extent; in most cases, his interest would be to maintain it. And, on the other hand, the debtor would not often have an interest to establish his creditor's right to land taken on execution. Hence it has probably happened that motions to amend returns have usually been made by plaintiffs and creditors; and few, if any

cases are to be found, in which such motions have been made by debtors and defendants.

No reason, however, is suggested why the power of the Court to grant an amendment should not be exercised to prevent injustice to a debtor as well as to a creditor. After a creditor has taken land of his debtor to satisfy a judgment, the debtor has a manifest interest in the question whether the extent shall be maintained and the judgment satisfied by appropriation of the land, or the creditor be permitted to retract the election he has *made to* take payment by his levy, and hold the debtor liable in another form. It is very easy to suppose a state of facts, in which great injustice would be done to the debtor if leave to amend the return on his motion were refused. If, in this case, the creditor had directed the levy to be made ; had appointed an appraiser and recovered seisin of the officer ; had taken and retained actual possession of the land ; and, after all this, on discovering a mistake in the return, had attempted to abandon his title under the extent, and brought a suit on the judgment, the principle of correcting error and preventing injustice, upon which these amendments are allowed, would undoubtedly have required the Court to grant leave *to amend on motion of the* debtor.

*We think,* therefore, *that the motion is not to be denied because* it is made by or on behalf of the debtor. He is interested in the extent ; and, to prevent injustice in a proper case, the Court would grant leave to amend a return on his motion, as well as on motion of the creditor.

The return, if amended, would agree with the facts, as they have appeared in evidence. It would seem, however, to be conceded in argument, that such motions are addressed to the discretion of the Court, and are to be allowed or denied as may best promote justice and fair dealing, according to the circumstances of each individual case. One authority has indeed been cited, though apparently not much relied on. *Montgomery* v. *Brown,* 2 Gilman's Rep. 584, to the position, " that it is the duty of the Court to exercise the discretion and grant the leave." By this it can hardly be meant that the Court have no other

Baker *v.* Davis.

duty but to find whether the amendment will be according to the fact; if so, the Court exercise no discretion, in any proper sense of that term; and even if that case can be understood to countenance such a doctrine, it is controlled by a great weight of opposing authority. *Treman* v. *Paul*, 3 Greenleaf, 264; *Johnson* v. *Dacy*, 17 Pick. 108; *Pierce* v. *Strickland*, 2 Story's Rep. 292, and *Miller & a.* v. *Shackleford*, 4 Dana, 264, are all strong to the point, that after the Court are satisfied by the evidence that the proposed amendment would agree with the facts, it still remains a question addressed to their discretion, whether the motion shall be granted or refused, according as the Court shall be of opinion that justice will be promoted by allowing or denying the amendment. The question then remains, whether, for the furtherance of justice among the parties, the facts of this case call on the Court to exercise their discretion to allow this motion.

From the facts before stated as having been proved in the case, these general results follow.

John Baker, before and at the time of the levy, was the sole owner of the note and judgment, and has continued to be so to this time.

Of this, Sargent the officer had full knowledge before, and at the time when he procured Nathaniel Baker, a nominal plaintiff, to appoint an appraiser.

John Baker gave no authority to levy on the land, and Sargent knew that, in making the levy and return, he was proceeding without the authority and against the wishes of the sole equitable creditor.

John Baker has done nothing to recognize the levy since it was made.

It is a very familiar principle that the assignee of a *chose in action* is to be regarded in equity as the real owner, and that Courts of law recognize this interest of the assignee, and protect it against all interference of the assignor. After Nathaniel Baker had assigned his share in the note, he had no interest in the debt or the judgment, and no right to interfere at all with the levy of the execution. The officer who serves an execution,

with notice that the judgment has been assigned, is bound to follow the instructions of the assignee, and cannot protect himself under a colorable authority or discharge from the nominal plaintiff.

In *Martin* v. *Hawks,* 15 Johns. Rep. 405, an attorney, who had a lien on a judgment for costs, delivered the execution to an officer with notice of his lien. The officer, after an arrest, voluntarily suffered the defendant to escape. In an action brought by the attorney, in the name of the plaintiff, against the officer for the escape, it was held that the sheriff could not avail himself of a release from the nominal plaintiff.

In *the State* v. *Herod,* 6 Blackford, 444, it was decided that the assignor of a judgment has no control of it, nor of an execution on it sued out by the assignee ; and that if the sheriff, with notice of the assignment, fail to discharge his duty, though he acted by order of the assignor, he was liable to a suit for the use of the assignee.

In Connecticut, where the assignee of a note, not negotiated, has recovered judgment in the name of the payee against the maker, the assignee is the proper party to be served with notice of the defendant's petition for the benefit of an insolvent act. *Colburn* v. *Rossiter,* 2 Conn. Rep. 503.

These authorities are full to the point, that a sheriff, though he acts in the service of process under an authority in law, is bound to follow the lawful instructions of an assignee, of whose interest he has notice, and cannot protect himself under color of authority derived from a nominal plaintiff, who has parted with his interest. The appointment of an appraiser by Nathaniel Baker, after distinct and repeated notice of his assignment to John, and after John had been solicited to appoint an appraiser and declined, gave the officer no right, at least in an equitable point of view, to make the levy ; and his proceeding under such colorable authority was a fraud on the rights of the sole equitable creditor.

Nor could the fact, that the attachment of the land in mesne process was directed by John Baker, give authority to levy on it without further instructions. *Start* v. *Sherwin,* 1 Pick. 521.

Baker *v.* Davis.

And, besides, express instructions were given the officer to levy on the personal property attached, and repeated and pressing applications were made to John Baker for authority to levy, without obtaining it.

The officer therefore made this levy and the return without authority from the only party who had power to give it, with full knowledge that he was acting in violation of the rights of the sole equitable owner of the judgment.

It is urged that Wadleigh, one of the defendants, is a surety, and that his interests are involved in the motion ; that the levy on land of the principal debtor placed a fund in the hands of the creditor, which he was bound to apply in discharge of the surety ; that the surety is discharged by taking the land of the principal in execution, though the extent should be voluntarily abandoned by the creditor ; and that his declining to have the return amended amounts to an abandonment of the extent.

It would seem to be a sufficient answer to this position, that the land in this case was never levied on by the creditor nor by his direction ; that the creditor has never received or accepted any fund of the principal, and that the land cannot be forced on him against his will for the purpose of discharging either principal or surety.

Besides, if the land of the principal has been taken by the creditor, and that is to operate as a discharge of the surety, the surety can make that defence to the judgment without an amendment of the return.

We are not, however, prepared to hold that a creditor cannot commence a levy on land of the principal debtor, and abandon it without discharging the surety. The authorities would seem to lead in the other direction. *Bellows* v. *Lovell,* 5 Pick. 307 ; *Bank* v. *Dixon,* 4 Verm. Rep. 587 ; *Mundorf* v. *Singer,* 5 Watts, 172.

*Motion denied.*